PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K GARRISON    (1946-1991)
RANDOLPH E PAUL     (1946-1956)
SIMON H RIFKIND     (1950-1995)
LOUIS S WEISS       (1927-1950)
JOHN F WHARTON      (1927-1977)

UNIT 3601, OFFICE TOWER A  BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
EDWARD T ACKERMAN
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
CATHERINE L GOODALL
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY, III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
AMRAN HUSSEIN
LORETTA A IPPOLITO
BRIAN M JANSON
JAREN JANGHORBANI

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
BRIAN KIM
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
LORIN L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
ELIZABETH M SACKSTEDER
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS, JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JENNIFER H WU
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

WRITER'S DIRECT DIAL NUMBER

(212) 373-3553

WRITER'S DIRECT FACSIMILE

(212) 492-0553

WRITER'S DIRECT E-MAIL ADDRESS

sbuergel@paulweiss.com

January 26, 2015

By Hand and ECF

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

*U.S. Bank, National Association, solely in its capacity as Trustee for Citigroup Mortgage Loan Trust 2007-AR7* v. *Citigroup Global Markets Realty Corp. & CitiMortgage, Inc.*
No. 13 Civ. 6989 (S.D.N.Y.)

Dear Judge Daniels:

      We represent Defendants Citigroup Global Markets Realty Corp. ("CGMRC") and CitiMortgage, Inc. ("CMI," and with CGMRC, "Citigroup") in the above-referenced action.  We write in response to U.S. Bank's January 12, 2015 letter, which requests leave to file a second amended complaint (ECF No. 67-1, "Proposed Complaint") in an effort to remedy the pleading deficiencies that resulted in the Court's dismissal from the First Amended Complaint of the Second and Third Causes of Action and of the First Cause of Action in part.  (Mem. Decision & Order Nov. 14, 2014, ECF No. 58 (the "Order").)

      Citigroup respectfully requests that the Court deny U.S. Bank's request because the proposed amended causes of action would not survive a motion to dismiss,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                 2

and the amendments therefore are futile. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

### I.   U.S. Bank's Amendment to its First Cause of Action is Futile

U.S. Bank has re-pleaded its First Cause of Action with respect to the January 28, 2014 Breach Notice (the "Third Breach Claim") as a breach of contract, (Proposed Compl. ¶¶ 90–99), after the corresponding anticipatory repudiation claim was dismissed (*see* Order 9–12 & n.10). This amendment is nonetheless futile because the Third Breach Claim is barred by New York's six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(2); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 231 (App. Div. 2013).

The Third Breach Claim accrued, at the latest, on May 31, 2007, the closing date for the Pooling & Servicing Agreement ("PSA").[1] PSA § 1.01 (defining "Closing Date"); *ACE Sec. Corp.*, 977 N.Y.S.2d at 231. In order for its claim to be timely, U.S. Bank was required to assert its breach claim prior to January 29, 2014.[2] U.S. Bank did not issue the notice until January 28, 2014, and any corresponding breach could not have occurred until 90 days thereafter, April 28, 2014. (*See* PSA § 2.03(a); Order 12 n.10.) The Third Breach Claim could not have been asserted until six years and three months after it had accrued, and it is therefore barred by the statute of limitations. *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322 (PKC), at 13–14 (S.D.N.Y. Jan. 9, 2015)[3] ("*MASTR*") (dismissing pre-complaint repurchase claims where the cure period expired after the statute of limitations period had elapsed); *ACE Sec. Corp.*, 977 N.Y.S.2d at 231.

Moreover, U.S. Bank cannot claim that CGMRC was on notice of the Third Breach Claim by reason of the prior breach notices. (*See* Order 10 n.9.) As we explained in our earlier brief, the only plausible reading of the allegations in U.S. Bank's serial complaints is that there was no notice of the 25 loans in the Third Breach Claim prior to January 28, 2014. (*See* Mot. to Dismiss Reply Br. 5–6 & n.2, ECF No. 33 (citing U.S. Bank's allegations that the forensic review identified 466 loans as of October 1, 2013, which then increased to 491 loans on January 28, 2014).) This "pervasive breach" argument has likewise been squarely addressed and denied. *See MASTR* at 17–21; *see also* Proposed Compl. Exs. 5–7, ECF Nos. 67-6–67-8 (requesting that CGMRC cure or repurchase "the Subject Loans" identified "on Schedule I").[4]

---

[1]   Proposed Compl. Ex. 1, ECF No. 67-2.

[2]   The parties entered into a tolling agreement effective January 31, 2013 through September 30, 2013, such that the statute of limitations was extended by approximately eight months.

[3]   Attached as Exhibit A.

[4]   U.S. Bank cannot avail itself of the relation-back doctrine. The Third Breach Claim by definition does not assert a claim that was set out in the original pleading, *see* Fed. R. Civ. P. 15(c)(1)(B), and New York law does not allow relation back for the same reason. N.Y. C.P.L.R. § 203(f) (stating that

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels     3

    Lastly, the Court should not allow U.S. Bank to evade its contractual obligations and the statute of limitations by generalizing its First Cause of Action to include some hypothetical set of loans that have not been identified. (*See* Proposed Compl. ¶ 99 ("[CGMRC] . . . must repurchase . . . all . . . Mortgage Loans identified in the Breach Notices *or in the future as being in breach* . . . .") (emphasis added); *see also id.* ¶¶ 96–97.) U.S. Bank cannot plead a breach of contract for these unknown, non-noticed loans, (*see* Order 11–12), and cannot rely upon a theory of "pervasive breach" to save them. *See MASTR* at 17–21.

    U.S. Bank's amendments to its First Cause of Action are not actionable because the Third Breach Claim would be time-barred and because U.S. Bank has otherwise failed to demonstrate an actual breach, and any amendment is therefore futile.

**II. U.S. Bank's Second Cause of Action is Insufficiently Pleaded; Alternatively, its Settlement-Related Allegations Should be Stricken**

    As the Court has noted, the issues in this Action are similar in some respects to the related action pending before Your Honor, *Citigroup Mortgage Loan Trust 2007-AMC3* v. *Citigroup Global Markets Realty Corp.*, No. 13 Civ. 2843 ("*AMC3*"). In that regard, while CGMRC respectfully disagrees with Your Honor's November 14, 2014 ruling in *AMC3* granting leave to amend, we are mindful of the Court's reasoning and the Court's reference to the *AMC3* ruling in note 11 of the Order. We therefore state briefly that, with respect to U.S. Bank's Second Cause of Action, the amended allegations in the Proposed Complaint consist of nothing more than bare recitations of statistics and conclusory assertions related to due diligence.[5] (Proposed Compl. ¶¶ 56–59, Ex. 4.) U.S. Bank has failed to identify any actual alleged breaches of representations and warranties in the Non-Noticed Loans, and its amended Second Cause of Action is insufficiently pleaded.

    U.S. Bank's only other support for its amended Second Cause of Action are conclusory allegations and suppositions derived from a settlement agreement entered into between Citigroup Inc., the Department of Justice, and certain state attorneys general. (Proposed Compl. ¶¶ 9–11, 62–67, 106, 109.) Not only are these allegations "rife with conjecture," (Order 12), but *the Court also has already denied U.S. Bank's attempt to shoehorn these exact same legally deficient allegations into this Action*:

---

relation back is allowed "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.").

[5] We also note that U.S. Bank's allegation that "[CGMRC] failed to repurchase any Group III or IV Mortgage Loans," (Proposed Complaint ¶ 59), is demonstrably false. *See, e.g.*, Ex. B at 6 (August 27, 2007 Certificateholder Distribution Report, *available at* https://sf.citidirect.com/stfin/docs/25972/CMLTI2007_AR7_2007_08_25.pdf).

We have redacted nonpublic information and information that could otherwise be used to identify the borrowers from Exhibits B and D through K. If the Court wishes to see unredacted versions, we would be happy to submit such documents under seal.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                 4

> Plaintiff's request that this Court take judicial notice of the statement of facts incorporated into the July 14, 2014 settlement agreement between Citigroup, Inc. and the U.S. Department of Justice and certain states attorneys general, and that it be considered in connection with the Court's ruling on defendants' motion to dismiss, is DENIED.

(Order Sept. 24, 2014, ECF No. 51.)[6]

The Court has already ruled on this issue, and U.S. Bank's amended allegations related to the settlement are, at best, an attempt to seek reconsideration of the Court's prior order through a request for leave to amend, if not in complete disregard of that ruling altogether. U.S. Bank "can not escape this Court's [prior] ruling merely by rephrasing the [allegations]." *About com v. TargetFirst, Inc.*, No. 01 CV 1665(GBD), 2003 WL 942134, at *2–3 (S.D.N.Y. Mar. 10, 2003) (denying leave to amend previously dismissed claim because "the underlying factual basis that [movant] relies upon . . . has not changed"). U.S. Bank cannot amend its Second Cause of Action to re-litigate an issue that has already been decided without offering any basis for the Court to reverse the ruling. *See ICC, Int'l Cargo Charters, Can., Inc. v. TradeWinds Airlines, Inc.*, No. 03 CV 5026(GBD), 2008 WL 4104023, at *2 (S.D.N.Y. Aug. 28, 2008) ("[I]n the absence of such corruption of the judicial processes, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (quoting *Int'l Ore & Fertilizer Corp v. SGS Control Servs.*, 38 F.3d 1279, 1287 (2d Cir. 1994))).

Even if U.S. Bank's request for leave to file settlement-related allegations in the Proposed Complaint could be considered to present a different issue than U.S. Bank's prior judicial notice request, the allegations are legally and fundamentally deficient for the same reasons set forth in our opposition to the judicial notice request. (*See* Ltr. in Opp. to J. Notice 2–3 & n.1, ECF No. 48.) Well settled Second Circuit precedent holds that allegations derived from settlements and other non-adjudicated proceedings are impertinent and immaterial for the purposes of Federal Rule of Civil Procedure 12(f) and are therefore routinely stricken from pleadings. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).[7]

---

[6] *Compare, e.g.*, J. Notice Req. 2, ECF No. 46-1 ("The Statement of Facts [includes] details that are virtually identical to the allegations of the First Amended Complaint"), *with* Proposed Complaint ¶ 62 ("The Justice Department's investigation corroborates Clayton's testimony and the results of the due diligence on the Mortgage Loans").

[7] *See also, e.g.*, *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10 Civ. 864 (SLT)(RER), 2014 WL 3569338, at *4 & n.3 (E.D.N.Y. July 18, 2014) (granting motion to strike allegations in complaint derived from consent order), *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593–95 (S.D.N.Y. 2011) (same), *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050(PKC), 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (same), *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003) (same),

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                  5

Therefore, U.S. Bank should not be granted leave to plead its amended Second Cause of Action. If, however, U.S. Bank is allowed to re-plead, any settlement-related allegations should be excluded or stricken.

### III.   U.S. Bank Has Not Met its Burden of Pleading Sufficient, Non-Speculative Facts to Support its Third Cause of Action

U.S. Bank's pleading deficiencies also extend to its Third Cause of Action, which alleges breaches of CMI's obligations under the PSA. As this Court noted, "[e]ven if CitiMortgage did learn additional information in the course of modifying or servicing the loans," the failure to allege "facts to indicate that CitiMortgage should have known that this information constituted a breach of R&Ws" is fatal. (Order 15.) U.S. Bank's Proposed Complaint does nothing more than offer the same conclusory and speculative allegations, coupled with unfounded, irrelevant, and, in some instances, false "examples" that cannot save its claim.

As an initial matter, U.S. Bank is required to plead that CMI breached a representation, warranty, or covenant in the PSA[8] or that CMI's purported breach was willfully malfeasant, negligent, in bad faith, or in reckless disregard of its obligations. In the absence of such well-pleaded allegations, CMI cannot be held liable:

> None of . . . the Master Servicer or any of the directors, officers, employees or agents of . . . the Master Servicer shall be under any liability to the Trust Fund or the Certificateholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect . . . the Master Servicer or any such person against any breach of warranties, representations or covenants made herein, or against any specific liability imposed on the Master Servicer pursuant hereto, or against any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or negligence in the performance of duties or by reason of reckless disregard of obligations and duties hereunder.

(PSA § 6.03; *see also id.* § 6.01 ("[T]he Master Servicer . . . shall be liable in accordance herewith only to the extent of the obligations specifically imposed by this Agreement and undertaken hereunder by . . . the Master Servicer herein.").) "Contractual provisions that 'clearly, directly and absolutely' limit liability for 'any act or omission' are enforceable,

---

*Shahzad* v. *Meyers*, No. 95 Civ. 6196 (DAB), 1997 WL 47817, at *13–14 (S.D.N.Y. Feb. 6, 1997) (same).

[8]   *See* PSA § 2.05 ("Representations, Warranties and Covenants of the Master Servicer"). U.S. Bank has not pleaded such a breach.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels     6

'especially when entered into at arm's length by sophisticated contracting parties.'" *Baidu, Inc.* v. *Register.com, Inc.*, 760 F. Supp. 2d 312, 317 (S.D.N.Y. 2010) (quoting *Kalisch–Jarcho, Inc.* v. *City of New York*, 58 N.Y.2d 377, 384 (1983)).

         U.S. Bank's mere *ipse dixits* concerning negligence, recklessness, and bad faith, (*see, e.g.*, Proposed Complaint ¶¶ 82, 118), and conclusory allegations[9] regarding what CMI likely would have discovered are not sufficient. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007))). As this Court held, assuming that U.S. Bank's general descriptions of what CMI could have discovered in the course of performing its prescribed obligations are true, such allegations show, at most, that CMI could have been "in a position conducive to discovering breaches of the R&Ws," which, "without more, does not raise 'more than a sheer possibility' that CitiMortgage has breached the PSA here." (Order 15 (citation omitted).)

         U.S. Bank has attempted to remedy this deficiency by purportedly identifying alleged breaches of representations and warranties and describing how CMI discovered them. (Proposed Complaint ¶¶ 71, 73, 75–76.) However, a cursory review of U.S. Bank's specific allegations and U.S. Bank's own correspondence demonstrates that these alleged breaches are not even actionable, much less that CMI should have discovered them and issued notices thereof. (Order 15.)

         As a general matter, U.S. Bank points to no provision in the contract indicating that CMI has a general obligation to investigate every loan subject to a modification, foreclosure, bankruptcy, or mortgage insurance rescission to determine whether there is a breach of a representation and warranty. U.S. Bank cannot simply create such an obligation whole cloth, almost eight years after the agreement was executed, in the absence of any provision in the PSA obligating CMI to do so. (PSA § 6.01 ("[T]he Master Servicer . . . shall be liable . . . only to the extent of the obligations specifically imposed by this Agreement . . . .").)[10]

         Even assuming for the sake of argument that U.S. Bank's *post hoc* amendments to the PSA to create some new obligation for CMI to proactively investigate

---

[9]   Again, U.S. Bank's allegation that "[CGMRC] has not cured or repurchased a single defective Mortgage Loan," (Proposed Complaint ¶ 82), is false. *See, e.g.*, Ex. B at 6.

[10]   U.S. Bank has stated emphatically that there is no alleged breach of CMI's servicing obligations.

> THE COURT: Are you going to be making some argument about industry standards?
>
> MS. STATFELD: I am not. There are no claims that [CMI has] breached its servicing obligations. There are allegations – their claims are about they have breached their contractual obligation to notify of breaches . . . . Whether they service the loans in a prudent manner is not at issue in this case in any way.

Discovery Hr'g Tr. 139:10-18, Oct. 24, 2014 (excerpt attached as Exhibit C).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                 7

and search out potential pre-securitization breaches of representations and warranties every single time CMI receives a document or appears in a legal proceeding, U.S. Bank's specific examples fail to demonstrate actual breaches of representations and warranties:

- Loan xxxx8866 (Proposed Complaint ¶ 71): U.S. Bank states that CMI knew that the borrower did not disclose a $29,000 debt in the December 5, 2006 loan application, citing data in a July 16, 2009 credit report. However, the credit report in question only shows that a loan was obtained in December 2006, not on or prior to December 5, 2006. (*See* Ex. D at USB-AR7-001433132.)[11]

- Loan xxxx0283 (Proposed Complaint ¶ 71): U.S. Bank states that CMI knew that the borrower misrepresented income by receiving records of income earned in 2007. The loan in question closed in 2006, meaning that the borrower's 2007 income cannot provide knowledge of an alleged misrepresentation that could only have been made in 2006.[12]

- Loan xxxx9401 (Proposed Complaint ¶ 73): Again, U.S. Bank does not allege an actual breach. U.S. Bank alleges that the borrower's 2006 income was misrepresented, but U.S. Bank's only allegation in support of CMI's knowledge references a bankruptcy filing that discloses income earned in 2007, not 2006. (*See* Ex. E (excerpt of borrower's voluntary bankruptcy petition disclosing income of "39,926.00   2007 Tax Year").)

- Loan xxxx9347 (Proposed Complaint ¶ 75): Again, U.S. Bank does not allege a breach. Contrary to its allegations, the loan in question closed in 2006.[13] Therefore, U.S. Bank's reference to records of the borrower's 2007 income cannot provide knowledge of an alleged misrepresentation that could have only occurred in 2006.

- Loan xxxxx3681 (Proposed Complaint ¶ 76): This loan was not securitized into CMLTI 2007-AR7.[14]

---

[11] "In a ruling on a 12(b)(6) motion . . . a court may consider the complaint as well as any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Order 2 n.5 (quoting *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 746 F.3d 42, 44 n.1 (2d Cir. 2014)).

[12] *Compare* Proposed Complaint ¶ 71 ("It is unlikely that the borrower's income would have decreased . . . ."); *with* Order 14 ("[T]he allegations related to Plaintiff's Third Cause of Action are couched in speculative language concerning whether [CMI] actually discovered any breaches . . . .").

[13] According to U.S. Bank's first breach notice, this loan closed on December 12, 2006.

[14] U.S. Bank appears to be referencing the rescission notice attached as Exhibit F. Contrary to U.S. Bank's allegations, CMI notified U.S. Bank and others of alleged breaches with respect to both of the loans identified in Exhibit F, and U.S. Bank in turn issued repurchase claims for the same loans. *See* Exs. G, H (subsequent correspondence related to August 10, 2009 rescission notice from Triad Guaranty).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                                    8

- Loan xxxxx0386 (Proposed Complaint ¶ 76): This loan was securitized into CMLTI 2007-AR7, but it had no mortgage insurance policy. Triad Guaranty therefore could not have rescinded a policy nor informed CMI of an alleged breach.[15]

When U.S. Bank's unsupported, conclusory, and false allegations are disregarded, the Proposed Complaint pleads that—out of the 2,016 mortgages securitized into the trust and the hundreds of mortgages and that have been subject to modifications, foreclosures, bankruptcies, or mortgage insurance rescissions—there was one potential breach of a representation and warranty where CMI may have been in a position to discover such breach. At no point, however, does U.S. Bank plead how CMI discovered the breach or that CMI was obligated to investigate and identify such a breach every time it performed any of its contractual servicing obligations. (*See* PSA § 6.01.) Nor does U.S. Bank plead how the purported failure to identify a singular potential breach throughout almost eight years of servicing thousands of mortgages constitutes anything more than an error in judgment, much less a "reckless disregard of [its] obligations." *See* PSA § 6.03; *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)).

The well-pleaded amended allegations offer nothing more than the same generalized descriptions of conduct and knowledge and speculative allegations that were held insufficient in its First Amendment Complaint.[16] U.S. Bank's amendments are therefore futile, and it should not be granted leave to amend its Third Cause of Action.

## IV. U.S. Bank's Claim for Indemnity from CMI is Contradicted by the Plain Language of the Contract

U.S. Bank claims that CMI is required to indemnify the Trustee for any and all losses associated with this Action. (*See* Proposed Compl. ¶ 79 (citing PSA § 8.05(b)).) However, one need only look at the first sentence of the Proposed Complaint to see why this claim is improper: "Plaintiff U.S. Bank National Association, *not individually, but solely in its capacity as Trustee* . . . of the Citigroup Mortgage Loan

---

[15] In this instance, U.S. Bank appears to be referencing the rescission notice attached as Exhibit I. Contrary to U.S. Bank's allegations, CMI or Wells Fargo (as sub-servicer) notified U.S. Bank and others of alleged breaches with respect to both of the loans identified in Exhibit I—neither of which are Loan xxxx0386—and U.S. Bank in turn issued repurchase claims for the same loans. *See* Exs. J, K (subsequent correspondence related to July 30, 2009 rescission notice from Triad Guaranty).

[16] U.S. Bank cannot argue that additional discovery is needed to substantiate its allegations. U.S. Bank need only review its own correspondence and files (*see* Exs. B, D–K), to evaluate whether there are sufficient grounds for a claim.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels    9

Trust 2007-AR7 . . . brings this Second Amended Complaint . . . ." (Proposed Compl. at 1 (emphasis added).)

U.S. Bank is bringing this Action on behalf of the Trust, not on its own behalf. However, section 8.05(b) is an indemnity obligation for the Trustee in its personal or individual capacity; it is not an indemnification obligation for the Trust. *Compare*:

> In the event that a shortfall in any collection . . . results from . . . adjustments . . . made by the Master Servicer . . . , the Master Servicer. . . shall indemnify and hold harmless *the Trust Fund, the Trustee*, the Trust Administrator, the Depositor and any successor master servicer in respect of any such liability.

PSA § 3.25 (emphasis added); *with*:

> The Master Servicer agrees to indemnify *the Trustee*, the Trust Administrator, the Paying Agent, the Certificate Registrar, the Authenticating Agent and any Custodian from, and hold each harmless against, any loss, liability or expense resulting from a breach of the Master Servicer's obligations and duties under this Agreement.

PSA § 8.05(b) (emphasis added).

Even if U.S. Bank's claims for first-party indemnity in this Action were proper—and they are not—U.S. Bank cannot rely upon section 8.05(b) for its claim. Unless U.S. Bank claims actual damage and indemnity for the Trustee, *i.e., in U.S. Bank's personal or individual capacity*, and unless U.S. Bank amends its pleadings accordingly, Section 8.05(b) is inapplicable to this Action. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("Unless the indemnification clause refers 'exclusively or unequivocally' to claims between the indemnitor and the indemnitee, the court 'must find the agreement to be lacking evidence of the required intent' to cover such claims.") (quoting *Sequa Corp. v. Gelmin*, 851 F. Supp. 106, 110–11 (S.D.N.Y. 1994))).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable George B. Daniels                                                                 10

### V.   Conclusion

        Accordingly, for all these reasons, Citigroup respectfully requests that the Court deny U.S. Bank's request for leave to file the Proposed Complaint. To the extent the Court grants the request for leave to file a second amended complaint, Citigroup similarly requests leave to file a motion to dismiss such amended complaint and a motion to strike any amended allegations for the reasons discussed above.

        Respectfully Submitted,

        /s/ Susanna M. Buergel

        Susanna M. Buergel


cc (by email):   Gayle R. Klein, Esq.
                  Robert W. Scheef, Esq.
                  Courtney B. Statfeld, Esq.
                  McKool Smith, P.C.